UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAENGPHET (a.k.a., Saengphet No Last Name, Saengphet NLN)<br><br>                                   Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Directo1 San Diego Field Office, and CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center<br><br>                                   Respondents. | Case No.: 3:25-cv-2909-JES-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING CLAIM ONE OF THE PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241;**<br><br>**(2) DENYING CLAIM TWO OF THE PETITION AND MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; and**<br><br>**(3) DENYING CLAIM THREE OF THE PETITION FOR LACK OF STANDING AND MOOTNESS**<br><br>**[ECF Nos. 1, 3]** |

Before the Court is Petitioner Saengphet's ("Petitioner" or "Saengphet") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Motion for a Temporary Restraining Order. ECF No. 1, ("Pet."); ECF No. 3, ("TRO"). The Petition and TRO were filed on October 28, 2025. *Id*. On that same day, Petitioner also filed a Motion for Appointment of Counsel pursuant to 18 U.S.C. § 3006A(a)(2). ECF No. 2. On October 29, 2025, the Court granted the Motion for Appointment of Counsel and set the briefing schedule for the Petition and TRO. ECF No. 4. Respondents filed their Response on November 3, 2025. ECF No. 7, ("Res."). Petitioner filed his Traverse on November 4, 2025. ECF No. 9, ("Trav."). And on November 5, 2025, the Court held a hearing on the Petition and TRO. ECF No. 10.

For the reasons set forth below, the Court **GRANTS** Claim One of the Petition for Writ of Habeas Corpus, **DENIES AS MOOT** Claim Two of the Petition and Motion for Temporary Restraining Order, and **DENIES** Claim Three of the Petition for lack of standing and mootness.

## I.   BACKGROUND

Petitioner was born in a Vietnamese refugee camp to Laotian parents and is currently detained in Otay Mesa Detention Center. Pet. Ex. A ("Pet. Dec.") ¶ 1. In 1989, Petitioner came to the United States and, soon after, became a lawful permanent resident. *Id*. In 2001, Petitioner was convicted of assault. *Id*. ¶ 2. This resulted in the initiation of removal proceedings against Petitioner and an immigration judge ordering him removed on June 27, 2002. *Id*. ¶¶ 2-3. After Respondents were unsuccessful in obtaining a travel document to Laos, for months, Petitioner was released from immigration custody on an order of supervision on October 24, 2002, pending removal to Laos *Id*. ¶ 3; ECF No. 7-2 ("Res. Dec.") ¶ 5. Between his release from immigration custody on October 24, 2002 and when ICE revoked Petitioner's release on May 28, 2017, Petitioner had numerous contacts with San Diego Police leading to multiple arrests, and even a conviction for possession of a firearm—for which he was sentenced to a 180-day term and three years' probation. Res. Dec. ¶¶ 6-7. However, after each contact with state and/or local law enforcement, Petitioner

was re-detained by U.S. Immigration and Customs Enforcement ("ICE") but was ultimately released on an order of supervision. *Id*. ¶ 6. Petitioner remained in immigration custody from May 28, 2017 until he was released on an order of supervision because of ICE's unsuccessful attempts to obtain a travel document from Laos. *Id*.

On October 15, 2025, ICE issued an administrative warrant for Petitioner and executed it upon his arrival to the ICE office for his annual check in. *Id*. ¶ 8; *see* ECF No 7-2 at 6-7, 12-13; Pet. Dec. ¶ 6. On the same day of his arrest, ICE provided Petitioner with a Notice of Revocation of Release ("Notice 1"). Res. Dec. ¶ 10; *see* ECF No 7-2 at 9-10. Then on October 29, 2025, Respondents provided Petitioner with an amended Notice of Revocation of Release ("Notice 2"). Res. Dec. ¶ 14; *see* ECF No 7-2 at 20-21. And later that same day, Respondents provided Petitioner with an informal interview pursuant to 8 C.F.R. §§ 241.4 & 241.13. Res. Dec. ¶ 15; ECF No 7-2 at 23-24; *see* 8 C.F.R. §§ 241.4(l) & 241.13(i).

Petitioner seeks habeas and injunctive relief from the Court by asserting the following claims: (1) In revoking Petitioner's release, Respondents have failed to comply with their own regulations, which violates the APA and the Fifth Amendment of the U.S. Constitution; (2) Petitioner's re-detention violates *Zadvydas v. Davis* because for the last 14 years, the Government has been unable to remove him and cannot show that there is a "significant likelihood of removal in the reasonably foreseeable future." 533 U.S. 678, 701 (2001); and (3) Respondents' practice of removing noncitizens, such as Petitioner, to a third country without providing an opportunity to assert fear of persecution or torture before an immigration judge also violates the Due Process Clause of the Fifth Amendment. Pet. at 2-3.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas*, 533 U.S. at 687; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### III.   DISCUSSION

**A. Jurisdiction**

The Court has jurisdiction to hear Claims One and Two of the Petition but lacks jurisdiction over Claim Three. The Court begins its discussion with Claim Three.

**1.  Claim Three**

Petitioner's third claim, in which he seeks injunctive relief, is based on an allegation of Respondents' intent to deport him to a third country. Pet. at 4-5, 9-12. In its Response, the Government makes clear that, at this time, it does not seek to take such action with respect to Petitioner. Res. at 4; Res. Dec ¶ 16.

Federal judicial power is limited by the Constitution, which permits courts to only hear matters that present "cases" and/or "controversies." U.S. Const., art. III, § 2; *SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972). The Supreme Court has established that "in a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is

certainly impending." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citation and quotation marks omitted). Thus, a case or controversy does not exist—and a party seeking injunctive relief lacks Article III standing—if they cannot show a real and immediate threat of future injury. *Id*.

Federal courts do not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992) (citations omitted). "A claim is moot if it has lost its character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (citation omitted). Thus, a claim is moot, and therefore must be dismissed, if an event occurs that prevents a court from granting effective relief. *GTE California, Inc. v. FCC,* 39 F.3d 940, 945 (9th Cir. 1994).

The Government's position, that it does not plan to send Saengphet to a country other than Laos, eviscerates any possibility of him showing the existence of a live controversy or an imminent threat of injury. This restricts the Court's ability to grant effective relief to Petitioner from being deported to a third country. Therefore, the Court finds that Claim Three is nonjusticiable for lack of standing and mootness. Thus, the Court dismisses Claim Three of the Petition.

**2. Claims One and Two**

Respondents assert that the Court does not have jurisdiction to hear Claims One and Two of the Petition because they stem from the Attorney General's decision to execute a removal order against Saengphet. Res. at 5-6. However, Petitioner does not seek relief from this Court from a decision to execute a removal order. Rather, he challenges the propriety of his detention as governed by Respondents' regulations and *Zadvydas*. Pet. at 8-17. Therefore, this argument has no bearing on this Petition.

Moreover, the Supreme Court's holding in *Zadvydas* directly contradicts Respondents' argument. 533 U.S. at 687-88; *see* Res. at 7. There, the Supreme Court rejected the application of 8 U.S.C. § 1252 to limit judicial review of post-removal-period

detentions under 8 U.S.C. § 1231(a). *Zadvydas*, 533 U.S. at 687-88 (holding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). Thus, just as other courts in this district have found in similar matters, this Court finds that it has jurisdiction to hear Petitioner's claims under 28 U.S.C. § 2241. *See Alegria Palma v. LaRose*, 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11, 2025); *Mendez Los Santos v. LaRose*, 25-cv-2216-TWR-MSB, ECF No. 14 (S.D. Cal. Sept. 4, 2025) (granting petition by minute order); *Rokhifirooz v. LaRose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025).

### B. Respondents' Regulatory Noncompliance Violates Due Process

The Court finds that the Government has failed to comply with its regulations that govern the re-detention of noncitizens. Specifically, when it provided Petitioner with inadequate notice of its justification for revoking his leave, which was also given on the same day that it conducted his informal interview. As a result, Petitioner was substantially prejudiced when challenging his detention, as set forth in the regulatory scheme. *See* 8 C.F.R. §§ 241.13(i)(2)-(3). This is a clear violation of Petitioner's due process rights. Accordingly, the Court grants Claim One of the Petition.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of a suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The detention and release of noncitizens that are subject to a final order of removal ("Relevant Noncitizens"), like Petitioner, is governed by 8 U.S.C. § 1231. This statute

provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3).

The revocation of Relevant Noncitizens' supervised release is governed by 8 C.F.R. §§ 241.4 & 241.13. Between the two regulations, there are four bases under which ICE may take such action: (1) when the noncitizen fails to comply with the conditions of their release. 8 C.F.R. § 241.4(l)(1); *id.* § 241.13(i); (2) when authorized by a revoking official, either the Executive Associate Commissioner or a district director. *Id.* § 241.4(l)(2); (3) when "in the opinion of a revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.*; and (4) finally, when due to changed circumstances, ICE determines that there is a significant likelihood that the noncitizen may be removed in the reasonably foreseeable future. *Id.* § 241.13(i)(2).

Petitioner raises two arguments in support of his claim that Respondents violated 8 C.F.R. § 241.13(i). First, ICE lacked the authority to revoke Petitioner's detention because since 2002, Petitioner has not violated the conditions of his release. Pet. at 7. Also, the Government has failed to obtain a travel document from Laos for more than the last twenty years. *Id*. Therefore, its sentiment that it is more likely to obtain one now does not constitute sufficient changed circumstances to justify his re-detention. *Id*. at 7-8. Second, Petitioner contends that the regulatory requirements, set forth by 8 C.F.R. § 241.13(i), are *prerequisites* to ICE revoking a Relevant Noncitizen's release. *Id.* Here, Petitioner did not receive advance notice from ICE of their plans to detain him. *Id.* Thus, Petitioner's detention is in violation of the Government's regulations. *Id*.

//

The Government contends it has complied with its regulations when it revoked Petitioner's release because the regulations do not require the provision of advance notice to a noncitizen, nor must it prove—prior to revoking one's release—and to the petitioner's satisfaction, that changed circumstances are present. Res. at 12. The Government, however, avers that changed circumstances, as required under 8 C.F.R. § 241.13(i), are present with respect to Petitioner's removal because of ICE's recent ability to obtain travel documents from the Laotian government and schedule routine removal flights to Laos. *Id.*; Res. Dec. ¶¶ 20–21.

The Court begins its analysis with Petitioner's second argument. On this point, it agrees with the Government.

Here, the regulation's plain language, specifically the words "[u]pon revocation" and "after his or her return to Service custody,"[1] makes clear that the Government is not required to provide a detainee advance notice of the bases for it revoking their release, or an informal interview, before doing so. 8 C.F.R. § 241.4(l)(1); *id*. § 241.13(i)(3). Thus, the Court finds that Respondents did not violate their regulations by not providing Petitioner with advance notice of the reasons for revoking his release.

The Court now turns to Petitioner's first argument, that the Government lacked regulatory authority to revoke his release. Petitioner maintains that he did not violate the conditions of his release. But Respondents do not allege that Petitioner did. Thus, the first subpart of Petitioner's first argument is irrelevant to the Court's inquiry.

To determine whether Respondents had authority to revoke Petitioner's release, the Court must analyze their proffered justifications for doing so. After being re-detained, the Government provided Petitioner with two Notice of Revocation of Release forms, which state the Government's basis for revoking his release. ECF No. 7-2 at 9; *Id*. at 20. The first Notice of Revocation of Release ("Notice 1") was issued on October 15, 2025. *See id.* at

---

[1] This regulatory language relates to when an informal interview is to be conducted.

9. The second Notice of Revocation of Release ("Notice 2") was issued on October 29, 2025. *See id.* at 20.

### 1. Notice 1

Notice 1 was issued to Petitioner on October 15, 2025, the same day he was arrested by ICE. *Id*. at 9. Notice 1 states that "pursuant to 8 C.F.R § 241.4 / 8 C.F.R § 241.13, you are to remain in ICE custody at this time … [t]his decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case." *Id*. Both of the regulations the Notice cites to require Petitioner to be notified of the reasons for revocation of their release, "upon revocation". 8 C.F.R § 241.4(l)(1); *id*. § 241.13(i)(3). While the Court acknowledges that Respondents provide timely notice to Petitioner, it also finds that Notice 1 is defective for three reasons.

First, Respondents seemingly cite to 8 C.F.R § 241.4 in error. This is because Notice 1 states that "changed circumstances" formed the basis for ICE's determination to re-detain Petitioner. *See* ECF No. 7-2 at 2. But the revocation of a noncitizen's release on such a ground is not authorized by that regulation. *See* 8 C.F.R § 241.4(l). It is, however, authorized by 8 C.F.R § 241.13(i). *Id.* § 241.13(i)(3).

Second, even when analyzing the Government's justifications for revocation, solely under 8 C.F.R § 241.13, Notice 1 is overly vague. *See* ECF No. 7-2 at 2. While Notice 1 advises Petitioner that he will remain in custody, it fails to specify why the Government has made this decision. *See id.* Notice 1 does not cite to a specific subsection that applies to Petitioner and thus authorizes his re-detention. *See id*. It does not state any facts or allegations that Petitioner violated a condition of his release. *Id*. Nor does it indicate which criteria under 8 C.F.R. § 241.13(f) that is implicated and supports revocation of Petitioner's release. *See id.*

And while Notice 1 states that ICE's review of Petitioner's alien file and "changed circumstances" justify his re-detention. *Id.* The Court finds that these statements are wholly conclusory. This is because Respondents fail to indicate which facts contained within Petitioner's alien file—or what specific circumstances, that are relevant to Petitioner, have

changed and therefore—justify the revocation of Petitioner's release. To successfully contest his detention, Petitioner must adequately "respond to the reasons for revocation stated in the notification." 8 C.F.R § 241.13(3). And here, the Government's provision of such conclusory "reasons," is highly likely to result in Petitioner losing his challenge before it even begins.

Finally, the stated justifications in Notice 1 fail to appropriately invoke revocation authority under 8 C.F.R § 241.13(2). *Id*. This is because ICE can only revoke a Relevant Noncitizen's release, under the regulatory the basis of changed circumstances, when ICE "determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id*. Notice 1 references the existence of some unspecified changed circumstances in Petitioner's case. *See* ECF No. 7-2 at 9. However, it fails to explain how these circumstances are relevant to, and more importantly justify, ICE's determination "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *See id.*; 8 C.F.R § 241.13(2). Therefore, the Court finds that the proffered justifications stated in Notice 1, fail to satisfy the regulatory criteria, as set forth in 8 C.F.R § 241.13(2), which authorizes the revocation of Relevant Noncitizens, such as Petitioner.

Accordingly, the Court concludes that, pursuant to Notice 1, the Government lacked regulatory authority to re-detain Petitioner.

### 2. Notice 2

The Court finds that Notice 2 is defective because it provides inadequate notice as to why Petitioner's release was revoked. It finds further that another defect arises from when the Notice was issued, in relation to when ICE conducted the informal interview. This is because doing so when ICE did, resulted in Petitioner being substantially prejudiced when he was to contest the revocation of his release later that same day.

The Court analyzes the propriety of Notice 2 by first assessing: (1) whether it provided sufficient notice to Petitioner, then (2) the timing of when it was issued.

//

### a. Sufficiency of Notice

ICE provided Petitioner with Notice 2 on October 29, 2025, two weeks after his arrest. ECF No. 7-2 at 20. Notice 2 is similar to Notice 1, in that, it advises Petitioner that ICE's review of his alien file and its determination that changed circumstances justify him remaining in custody. *See id.* Notice 2 does, however, attempt to distinguish itself from its predecessor which is evidenced by four of its components. (1) It alludes that the Government was authorized to revoke Petitioner's release, under 8 C.F.R § 241.13(2), because of ICE's determination that he can be removed to Laos "expeditiously". *See* 8 C.F.R § 241.13(2); ECF No. 7-2 at 20. (2) The Notice highlights a specific fact from Petitioner's alien file that supports ICE's determination (i.e., that he was ordered removed to Laos on June 27, 2022). *Id.* (3) It states that the Government is in the process of obtaining a travel document from, and finding a removal flight to, Laos. Meaning that it is actively taking steps to effectuates Petitioner's removal in the reasonably foreseeable future. *Id.*; *see* 8 C.F.R § 241.13(2). (4) Lastly, Notice 2 outlines the regulatory scheme for a noncitizen to challenge the revocation of their release. ECF No. 7-2 at 20.

The Court notes that, in their brief, Respondents, provide additional details and facts that support its contention that change circumstances, related to Saengphet's removal, may be present. (Res. Dec. ¶18-23.) (explaining that the Government has established routine flights to Laos over the last several months, completed removal flights as recently as October 22, 2025, and has removed 177 Laotian citizens to Laos over the last year). However, these changed circumstances are generally applicable to Relevant Noncitizens that are pending removal to Laos. As discussed in Section III-C below, none of the circumstances that the Government claims to have changed are specifically relevant to Petitioner, whose Laotian citizenship is unclear and has a sizeable criminal history.

Moreover, what controls, here, are the contents of Notice 2, not those in Government's Response. And most relevant to the Court's inquiry is Notice 2's first component. Where ICE states that it "has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal against you."

ECF No. 7-2 at 20. As discussed above, Respondents attempt to invoke regulatory authority but fail to do so because this statement is conclusory. *See Sarail A. v. Bondi*, ---F. Supp. 3d ---, 2025 WL 2533673, at *10 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition.").

The Court acknowledges that Notice 2 provides more information to the Petitioner than Notice 1. However, the Government's provision of such notice still falls short of what is required under its regulation and the Due Process Clause of the Fifth Amendment.

Accordingly, the Court finds that Notice 2 does not provide adequate notice to Petitioner as required under 8 C.F.R § 241.13(3).

### b. Timing of Notice

The timing of Respondents' provision of Notice 2 to Petitioner seriously troubles the Court. On the one hand, Respondents provided Petitioner Notice 1, albeit defective, the very same day he was arrested. *See* ECF No. 7-2 at 9. And on the other, it took Respondents an additional two weeks to provide Petitioner with the amended notice that contained the newly proffered reasoning for revoking his release. *See id*. at 20.

The Court struggles to find that a two-week delay clearly complies with the regulation's "upon revocation" notice requirement. *See* 8 C.F.R § 241.13(3). And while such a period may not be objectively egregious enough for a court to make a finding in the alternative, two other issues with Notice 2 bring the Court far more concern.

The first of which is that Petitioner filed this action on October 28, 2025, and ICE issued Notice 2 the very next day. *See* Pet.; Res. Dec. ¶14; ECF No. 7-2 at 20. Respondents do not indicate in their brief what prompted ICE to issue an amended notice to Petitioner. *See generally* Res. And although there is insufficient evidence for the Court to conclude so, it certainly hopes that Saengphet filing this Petition was not the catalyst to the Government's after-the-fact attempt to comply with its own regulations.

The second troubling issue is that Notice 2 was provided on October 29, 2025—the same day that ICE conducted Petitioner's informal interview. *See id.; see also* Pet.; Res. Dec. ¶15; ECF No. 7-2 at 23. 8 C.F.R § 241.13's regulatory scheme requires the Government to provide a noncitizen with notice of the reasons for revocation of their leave. *See* 8 C.F.R § 241.13(i)(3). Then when ICE conducts their informal interview, the noncitizen has an opportunity to contest their detention by adequately responding to, and overcoming, the stated reasons in the notice. *Id.*

When a petitioner is provided notice on the same day that their informal interview is conducted, they are substantially prejudiced in preparing competent arguments and/or gathering any supporting documents to regain their freedom. What results from such a situation is a deprivation of any "meaningful opportunity" for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom. *See Mathews,* 424 U.S. at 335. And that is exactly what happened here.

Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003). Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169-170 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp.3d 383, 387 (D. Mass. 2017); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025); Truong v. Noem et al., No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025).

After-the-fact determinations in an attempt to justify a noncitizen's re-detention cannot cure the Government's blatant procedural errors. Especially when notice is provided in such an egregious manner that it substantially prejudiced Petitioner, essentially compelling him to contest his re-detention blindly. The Court, therefore, finds that the Government failed to satisfy the notice requirement provided by its regulation. 8 C.F.R § 241.13(i)(3). As a result, Saengphet's Constitutional due process rights were violated.

Accordingly, the Court will grant Count One of the Petition and will order his release.

### 3. The Informal Interview

"Promptly" after re-detaining a noncitizen on supervised release, ICE must notify them of the basis for the revocation of their release and conduct an informal interview. *Id.* The informal interview "afford[s] the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Petitioner argues that the Government failed to comply with its own regulations because ICE failed to conduct an informal interview prior to re-detaining him and on the day that he was arrested. Pet. at 3; TRO at 9. Respondents contend to have complied with their regulations because Petitioner's informal interview was conducted on October 29, 2025. Res. Dec. ¶ 15; Res. at 3. This was two weeks after Petitioner's arrest and conforms with the regulatory time requirement. Res. at 12.

As the Court found earlier, 8 C.F.R § 241.13(3) does not create prerequisites that the Government must meet prior to revoking a noncitizen's release. Rather, they establish procedural safeguards the Government must comply with to avoid offending the Fifth Amendment. Accordingly, the Court finds that the Government did not violate its regulation by not conducting a pre-arrest informal interview of Petitioner.

The regulation calls for the informal interview to take place "promptly" after a noncitizen is re-detained. 8 C.F.R § 241.13(3). "Promptly" is defined by Black's Law Dictionary as, quickly; without delay; or as soon as practicable. *Id.;* PROMPTLY, Black's Law Dictionary (12th ed. 2024). Here, Respondents conducted Petitioner's informal interview on Turning to the October 29, 2025, fourteen days after he was detained.

The Court finds difficulty in construing such a period of time as "promptly." *See* 8 C.F.R § 241.13(3). However, considering the defective qualities Court identified, in its discussion above, with Notice 2, the Court declines to rule on whether the Government's two-week delay in conducting Petitioner's informal interview violated its regulations.

//

### C. Petitioner's *Zadvydas* Claim

In Claim Two of the Petition, Saengphet asserts that his re-detention violates *Zadvydas* because his six-month grace period has already expired. Pet. at 13. Petitioner argues that since his final order of removal was entered in June 2002, his aggregated time in ICE custody, all prior detentions and his current month-long detention, exceeds the presumptively reasonable six-month period rovided under *Zadvydas*. *Id*.; 533 U.S. at 701. Saengphet argues further that he has provided good reason to believe that there is no significant likelihood of removal because over the last decade, the Government has been unsuccessful in their attempts to remove him to Laos. *Id*. at 14; *see Zadvydas*, 533 U.S. at 701. Thus, the Court should grant him habeas relief.

Respondents raise four arguments to support their contention that Petitioner's removal to Laos in the foreseeable future is significantly likely. First, they do not foresee any barriers to the Laotian government issuing a travel document for Petitioner. Res. Dec. ¶ 23. Second, they have established routine flights to Laos over the last several months, having completed removal flights as recently as October 22, 2025. *Id*. ¶¶ 18-23. Third, from October 1, 2024 through September 8, 2025, ICE has removed 177 Laotian citizens to Laos. *Id*. ¶ 21. And fourth, they anticipate deporting Petitioner "on or before March 1, 2026," which constitutes the reasonably foreseeable future. *Id*. ¶ 23.

The Court acknowledges that the Government's recent success in deporting Relevant Noncitizens to Laos. However, it also has strong concerns regarding the propriety of Saengphet's detention under *Zadvydas*. Such as the collective length of Petitioner's detention has already exceeded *Zadvydas*' presumptively reasonable six-month period. Pet. at 13. Also, that on October 29, 2025, the Government represented that it submitted a travel document request for Petitioner. Res. at 9-10. However, that was merely an internal submission to the Laos Unit of ICE Enforcement and Removal Operations' Removal and International Operations. *Id*. Further, the Government fails to indicate when it expects to submit the travel document request to the Laotian government, or how long it will reasonably take to receive a response.

Separate and apart from the logistical challenges that the Government faces, the Court foresees potential practical obstacles to Laos issuing a travel document for Petitioner, which may prevent Petitioner's removal from being characterized a significant likelihood. For example, although Petitioner's parents were Laotian, Saengphet was born in a refugee camp in Vietnam. Therefore, he may not be viewed, by the Laotian government, as analogous to the 177 Laotian citizens that the Government successfully deported. Also, from his time in the United States, Petitioner has amassed an extensive criminal history. Thus, it is possible that because of Petitioner's Laotian citizenship status, or lack thereof, and his potentially troubling criminal record, Laos very well may decline to issue him a travel document.

At the November 5, 2025, hearing, the Court indicated that for it to rule on this claim, additional briefing would likely be necessary. However, in light of the Court granting Count One of the Petition, it need not issue such an order and **DENIES AS MOOT** Claim Two of the Petition.

### D. Temporary Restraining Order

Having ruled on the Petition on the merits, the Court declines to apply the *Winter* factors to determine whether to issue a TRO. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court, therefore, **DENIES AS MOOT** the Motion for Temporary Restraining Order.

### IV. CONCLUSION

In sum, the Government failed to follow its own regulations when it revoked Petitioner's release because it failed to provide him with adequate notice of its reasons for doing so. The Government also provided Petitioner with such notice in an untimely manner, this resulted in substantial prejudice when he challenged the revocation of his release. In doing so, the Government violated Petitioner's Constitutional due process rights. Accordingly, Petitioner's habeas Petition is **GRANTED** and Petitioner is ordered **RELEASED**.

//

For the reasons stated above:

(1) The Court **GRANTS** Claim One of the Petition;

(2) The Court **DENIES** Claim Three of the Petition for lack of standing and mootness;

(3) As Petitioner's sought after relief was granted with respect to Claim One, the Court **DENIES AS MOOT** Claim Two of the Petition and the Motion for Temporary Restraining Order;

(4) At the November 5, 2025, hearing, Respondents were **ORDERED** to immediately release Petitioner from custody, under the same conditions as previously imposed, and to **FILE** a Notice of Compliance to confirm when the Petitioner has been released;

(5) Respondents have complied with the Court's orders. Their November 7, 2025, Notice states that Petitioner was **RELEASED** from custody on November 6, 2025 (ECF No. 11.);

(6) In the event Petitioner seeks further habeas relief arising from the Government's conduct related to its future execution of the removal order, Petitioner must **FILE** a new Petition; and

(7) The Clerk of Court is **DIRECTED** to close this suit.

**IT IS SO ORDERED.**

Dated: November 20, 2025

Honorable James E. Simmons Jr.
United States District Judge